UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA MARIE PACHECO,<br><br>       Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>       Defendant. | Case No.  1:21-cv-00110-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 23, 27) |

## **Findings and Recommendations**

### **INTRODUCTION**

Plaintiff Linda Marie Pacheco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, the Court will recommend that Plaintiff's motion for summary judgment be denied and the Commissioner's request to affirm the agency's determination to deny benefits be granted.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

1

# FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on March 7, 2017, and protectively filed an application for supplemental security income on March 6, 2017. AR 232-34, 235-36.[2] Plaintiff alleged she became disabled on February 23, 2016, due to her knee, both shoulders, and back problems. AR 267. Plaintiff's applications were denied initially and on reconsideration. AR 147-51, 159-64. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Diane S. Davis issued an order denying benefits on August 31, 2020. AR 8-25, 51-93. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

**Relevant Hearing Testimony**

ALJ Davis held a telephonic hearing on May 28, 2020. Plaintiff appeared without a representative. Martin Rauer, an impartial vocational expert, also appeared. AR 54-57.

Plaintiff testified that she has an associate degree in office administration. She last worked on February 23, 2016. At the time, she was working at Bethlehem Construction as a secretary and receptionist. AR 70-71. She had a work-related injury on December 17, 2014, and she returned to work on modified light duty. After her work injury, she was not able to lift anything, sit or stand very long, or walk very much because she hurt her knees, back, and shoulders. She had surgery on her left shoulder in May 2015. Although Plaintiff was continued on modified duty, she was not able to go to work, and was let go in February 2016. By that time, her right shoulder started hurting more, and she ended up having surgery. AR 72-73, 75.

Plaintiff testified that she still has issues with her left shoulder. She cannot put her hands or arms all the way back or lift her arms all the way. AR 75-76. Her Worker's Compensation case has settled. They put her on permanent disabled at stationary. AR 76.

Plaintiff indicated that she received shots on her right knee, but she never got approval for shots on her left knee. She was not receiving ongoing treatment for her knees, but had been set

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

up for physical therapy before the Coronavirus. AR 76-77. She has a home exercise program for her shoulders and knees. The only treatment for her back is a heating pad. She takes muscle relaxers and Norco as needed, and Motrin during the day. AR 77-78.

Plaintiff currently lives with her son and daughter, until they find their own places. They have been living with her about a year. Plaintiff does her own laundry, cleans her room and bathroom, and cooks for herself. She does her own grocery shopping. On a typical day, she crochets, sews, or embroiders. She can sit about two hours to crochet, embroider, or sew. AR 78-80. She can stand about an hour and walk for less than hour. She was told not to lift more than five pounds. AR 80-81. She is able to wash her hair and put her makeup on most of the time. She can drive and does not have any issues with driving. AR 82.

Plaintiff testified that she has had two surgeries on the right shoulder, and she had an infection in the left shoulder. She had weight loss surgery because she gained so much weight, which was putting pressure on her knees and back. She is not able to sleep because of her injury. She is constantly tossing and turning. She wakes up at night because her shoulders get stiff. She can only sleep sideways with her knees bent. She takes muscle relaxers to help with sleep. AR 82-84.

**Medical Record**

The medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

On August 31, 2020, using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 8-25. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 2016, the alleged onset date. AR 14. The ALJ identified the following severe impairments: left and right shoulder impingement syndrome, left and right shoulder partial rotator cuff (RTC) tear; degenerative joint disease of the bilateral shoulders; degenerative disc disease of the lumbar spine; bilateral knee medial compartment osteoarthritis; and obesity. AR 14-15. The ALJ determined that Plaintiff did not have an impairment or

3

1 combination of impairments that met or medically equaled any of the listed impairments.  AR 15-
2 16.
3     Based on a review the entire record, the ALJ found that Plaintiff retained the residual
4 functional capacity ("RFC") to perform light work, meaning she could lift and/or carry up to 20
5 pounds occasionally and 10 pounds frequently; could stand and/or walk for up to four hours total
6 in an eight-hour workday; could sit for up to six hours total in an eight-hour workday; could
7 occasionally stoop, crouch, balance, kneel, crawl, and climb ramps and stairs; could never climb
8 ladders, ropes, or scaffolds; could do no work above the shoulder level; could tolerate occasional
9 exposure to work at unprotected heights and operating heavy machinery; and could do no pushing
10 or pulling greater than 15 pounds.  AR 16-24.  With this RFC, the ALJ determined that Plaintiff
11 was capable of performing her past relevant work as an office manager.  AR 24-25.  The ALJ
12 therefore concluded that Plaintiff had not been under a disability from February 23, 2016, through
13 the date of the decision.  AR 25.

## SCOPE OF REVIEW

15     Congress has provided a limited scope of judicial review of the Commissioner's decision
16 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
17 this Court must determine whether the decision of the Commissioner is supported by substantial
18 evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla,"
19 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
20 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
21 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.
22 The record as a whole must be considered, weighing both the evidence that supports and the
23 evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995
24 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the
25 proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This
26 Court must uphold the Commissioner's determination that the claimant is not disabled if the
27 Commissioner applied the proper legal standards, and if the Commissioner's findings are
28 supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

4

509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred (1) by rejecting the opinions of multiple treating and examining physicians without proper evaluation; and (2) in evaluating Plaintiff's subjective complaints. (Doc. 23 at 1.)

**A. Physician Opinions**

Plaintiff argues that the ALJ erred in evaluating the medical opinions from Dr. Michael Esposito, Dr. David Fisher, and Dr. Larry Cho. (Doc. 23 at 1, 16.)

Under the standards applicable to the claims here, the Ninth Circuit has identified three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. If contradicted, the opinion of a treating or examining physician can only be rejected for "specific and legitimate reasons"

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

1    that are supported by substantial evidence in the record. *Id.* at 830-31. The opinion of a

2    nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion

3    of either a treating or examining physician. *Id.* at 831.

4    <u>Dr. Esposito</u>

5    Plaintiff contends the ALJ failed to provide specific or legitimate reasons for rejecting the

6    disabling limitations opined by Dr. Esposito, and "picked through" the opinions for evidence

7    supporting non-disability. (Doc. 23 at 16.) Specifically, Plaintiff argues that "the ALJ adopted

8    findings of overhead reaching, but rejected findings of limited reaching at shoulder height." (*Id.*,

9    citing AR 21-22.) Plaintiff also argues that the ALJ rejected the limitation to "avoid kneeling and

10   squatting" and preclusion from "repetitive bending and twisting." (*Id.*, citing AR 1798.)

11   With regard to "limited reaching at shoulder height," Plaintiff fails to identify the specific

12   opinion from Dr. Esposito at issue (and fails to provide a citation to the administrative record

13   identifying the specific reaching limitation). The Court nonetheless recognizes that the ALJ

14   assigned some weight to Dr. Esposito's restrictions on overhead reaching as consistent with

15   Plaintiff's bilateral shoulder surgeries, but gave "little weight" to Dr. Esposito's other restrictions.

16   AR 21. As one reason for assigning little weight to the other restrictions, the ALJ acknowledged

17   that while treatment notes generally showed reduced range of motion in both shoulders, Plaintiff

18   also generally retained the ability to reach in front of her and to the sides below the head level.

19   AR 21, citing AR 1116 (reduced range of motion in both shoulders); 1812 (range of motion

20   "improving"); 1942-43, 32-33. An ALJ may properly discount a treating or examining

21   physician's opinion that is not supported by the medical record. *Batson v. Comm'r of Soc. Sec.*

22   *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating

23   physicians' opinions that are conclusory, brief, and unsupported by the record as a whole ... or by

24   objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ

25   need not accept the opinion of any physician, including a treating physician, if that opinion is

26   brief, conclusory, and inadequately supported by clinical findings."); *Gonzales-Welch v.*

27   *Berryhill*, No. 1:17-cv-01620-BAM, 2019 WL 1399845, at *5 (E.D. Cal. Mar. 28, 2019) ("An

28   ALJ may properly discount a treating physician's opinion that is not supported by the medical

record . . . ").

The ALJ also reasoned that Dr. Esposito's own treatment notes indicated that Plaintiff had gradually regained range of motion in her shoulders over time, so that by February 2019 she had normal flexion and abduction. AR 21, citing AR 1812 ("Range of motion is improving. She abducts to about 150, flexes to about 160."). An ALJ may reasonably assign little weight to a treating physician's opinion that is not representative of a claimant's long-term functioning due to subsequent improvement in his or her condition. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Indeed, an ALJ may reasonably cite a claimant's effective treatment as a reason to discount the extreme limitations posited by a treating source. *See Senko v. Astrue*, 279 F. App'x. 509, 511 (9th Cir. May 22, 2008) (unpublished) (finding ALJ properly rejected treating doctor's opinion where opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications"); *Gentry v. Berryhill*, No. 1:17-cv-01250-BAM, 2019 WL 1377033, at *8 (E.D. Cal. Mar. 27, 2019) (discussing that ALJ may properly assign little weight to treating physician's opinion that was inconsistent with the general effectiveness of the claimant's treatment).

As another reason, the ALJ considered that certain of Plaintiff's activities, including the ability to drive, prepare meals for herself, shop for groceries, do her laundry, wash her own hair, go swimming as her primary exercise (though no more than two hours per week), and often apply her own makeup, required reaching in various directions and repeated arm movements. AR 21, citing AR 1828 ("She states that she exercises on a regular basis at an average of 60 minutes a day, 2 times a week. Her main form of exercise is swimming.") and Testimony; *see also* AR 79-80 (testifying that she does her own laundry, cleans her room and bathroom, cooks for herself, and does her own grocery shopping); 82 (washes her hair, puts makeup on, drives). "A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir 2001)).

With respect to limitations to "avoid kneeling and squatting" and preclusion from "repetitive bending and twisting," this appears to relate to Dr. Esposito's opinion rendered in May

7

2019.  (*See* Doc. 23 at 16, citing AR 1798.)  In May 2019, Dr. Esposito opined that Plaintiff was "precluded from overhead work with both upper extremities," "not to push or pull greater than 15 pounds," "[a]void kneeling and squatting," and was "precluded from repetitive bending and twisting."  AR 1798.  The ALJ gave "overall great weight to this opinion" as it was supported by a physical examination and was broadly consistent with findings of a normal gait, 5/5 strength, and intact sensation, as well as Plaintiff's ability to perform most of her necessary daily activities without assistance.  AR 20-21.  As to Dr. Esposito's opined limitations on kneeling, squatting, bending, and twisting, the ALJ reasoned as follows:

> However, this opinion is still somewhat vague, as it does not specify . . . the amount of squatting, bending, and twisting the claimant can do.  As noted above, the claimant is restricted to occasional balancing, stooping, kneeling, crouching, and crawling, which should adequately accommodate the postural difficulties noted by Dr. Esposito in May 2019.  A complete restriction on kneeling would be inconsistent with the conservative treatment history for the back and knee impairments (see 9F/26; 14F/14; 15F/3).  Moreover, the treatment notes generally show a trend of improving range of motion in the knees (13F/15, 33; 15F/50).

AR 21.

Insofar as Plaintiff contends that the ALJ wholly rejected Dr. Esposito's postural limitations, that contention is belied by the ALJ's accommodation of those limitations by restricting Plaintiff to occasional balancing, stooping, kneeling, crouching, and crawling.  AR 21.  Moreover, the ALJ provided specific and legitimate reasons for rejecting Dr. Esposito's limitation to "avoid kneeling and squatting" and preclusion from "repetitive bending and twisting."  First, the ALJ found Dr. Esposito's opinion to be vague because it failed to specify the amount of squatting, bending, and twisting that Plaintiff could do.  AR 21.  "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion."  *Ford*, 950 F.3d at 1155 (citing *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)).  Further, an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Second, the ALJ discounted a complete restriction on kneeling as inconsistent with Plaintiff's conservative treatment history for her back and knee impairments.  AR 21, citing AR

812 (injection of Hyalgan for right knee), 1987 (physical therapy), 2052 (medications).[4] An ALJ may properly discount a treating physician's opinion that is not consistent with conservative treatment provided to the claimant. *See Spears v. Saul*, 842 F. App'x 107, 109 (9th Cir. 2021) ("The ALJ discounted Dr. Kurera's opinion because it was not consistent with the conservative treatment provided to Spears. This is a specific and legitimate reason, supported by substantial evidence from Spears's subsequent progress notes, which detailed a conservative treatment regime of medication and minimal counseling."); *Fisher v. Berryhill*, No. 8:17-CV-02019 (VEB), 2019 WL 13044622, at *3 (C.D. Cal. Mar. 11, 2019) (explaining that courts have recognized several types of evidence that may constitute a specific, legitimate reason for discounting a treating or examining physician's medical opinion, including inconsistency with a conservative treatment history).

Third, the ALJ discounted Dr. Esposito's kneeling restrictions based on Plaintiff's improved range of motion in her knees with treatment. AR 21, citing AR 1943 (June 2019; range of motion in both knees: flexion of 130 and extension of 180), 1961 (April 2018; range of motion in both knees: flexion of 120, extension of 180), 2099 (February 2020; "Bilateral knee with full ROM. . ."). As discussed above, improvement in a claimant's condition is a specific and legitimate reason for discounting a treating physician's opinion. *See Carmickle*., 533 F.3d at 116; *Gentry*, 2019 WL 1377033, at *8.

Plaintiff has not forwarded a specific or particularized challenge to any of the ALJ's stated reasons for discounting Dr. Esposito's opinions. Based on the above, the Court concludes that the ALJ did not err in her evaluation of Dr. Esposito's opined limitations.

Dr. Fisher

Similar to her contentions regarding Dr. Esposito's opinion, Plaintiff generally contends that the ALJ failed to provide specific or legitimate reasons for rejecting the disabling limitations opined by Dr. Fisher, and "picked through" the opinions for evidence supporting non-disability. (Doc. 23 at 16.) Although not entirely clear, Plaintiff appears to assert that the ALJ improperly

---

[4] Plaintiff also testified that she was not receiving ongoing treatment for her knees, and she only used a heating pad for her back. AR 76-77.

rejected Dr. Fisher's April 2018 opinion that limited Plaintiff to "avoid heavy lifting, pushing and pulling activities with either arm and to avoid repetitive or prolonged kneeling, squatting, crawling, and climbing activities." (Doc. 23 at 16-17.) Plaintiff also appears to assert that the ALJ improperly rejected Dr. Fisher's June 2019 opinion that limited Plaintiff "to avoid squatting, climbing, crawling, reaching above the shoulder lifting, or climbing of stairs and ladders." (*Id.* at 17.)

According to the record, in April 2018, Dr. Fisher recommended that Plaintiff "avoid heavy lifting, pushing and pulling activities with either arm" and "avoid repetitive or prolonged kneeling, squatting, crawling, climbing activities." AR 1962. In June 2019, Dr. Fisher restricted Plaintiff to "no above shoulder reaching or lifting," "no climbing of stairs or ladders," and no squatting, climbing or crawling. AR 1952. In that same month, Dr. Fisher opined that Plaintiff was "temporarily totally disabled" for two weeks after each surgery, but that otherwise she would have been able to work at modified duty. AR 1943. In particular, she would be "restricted in climbing stairs and ladders with no kneeling, squatting or crawling and no lifting or reaching above shoulder height." AR 1943.

The ALJ gave "some limited weight" to Dr. Fisher's opinions, reasoning as follows:

> The restrictions on heavy lifting/pushing/pulling and overhead work are generally consistent with the claimant's bilateral shoulder surgeries (see 13F/33-34). As for the postural limitations, Dr. Fisher's statements are somewhat contradictory as to whether the clamant can perform some degree of kneeling, squatting, crawling, and climbing (13F/15, 24, 34). The more restrictive limitations are inconsistent with findings of normal gait, 5/5 strength, and intact sensation, as well as the claimant's ability to perform most of her necessarily daily activities without assistance (9F/330, 640, 786; 13F/33; 15F/50, 60, 62; Testimony). They are inconsistent with the conservative treatment history for the back and knee impairments (see 9F/26; 14F/14; 15F/3). Moreover, the treatment notes generally show a trend of improving range of motion in the knees (13F/15, 33; 15F/50).

AR 23.

As with the opinion of Dr. Esposito, the ALJ provided specific and legitimate reasons for discounting Dr. Fisher's restrictive limitations regarding kneeling, squatting, crawling, and climbing.[5] For instance, the ALJ found these limitations inconsistent with Plaintiff's examination

---

[5] The Court notes that the ALJ did not discount Dr. Fisher's limitations on heavy lifting, pushing, and pulling and overhead work. Instead, the ALJ found those limitations generally consistent with Plaintiff's

10

findings of normal gait, 5/5 strength, and intact sensation. AR 23, citing AR 1116 ("Examination shows patient's gait and station are within normal limits."), 1426 ("Physical examination of the patient's knees reveals that she walks with a normal gait."), 1572 ("Examination shows patient's gait and station are within normal limits."); 1961 (able to ambulate about the room, full range of motion of the knees, 5/5 motor function, no sensory deficits in lower extremities); 2099 ("gait normal"), 2109 ("gait normal"), 2111 ("gait normal"). An ALJ may properly reject a medical opinion that is inadequately supported by medical findings. *See Thomas*, 278 F.3d at 957; *Ybarra v. Saul*, No. 1:18-cv-00924-BAM, 2019 WL 4734759, at *8 (E.D. Cal. Sept. 27, 2019).

The ALJ also found the restrictive limitations inconsistent with Plaintiff's ability to perform most of her daily activities without assistance. AR 23, citing Testimony; *see also* AR 79-80 (testifying that she does her own laundry, cleans her room and bathroom, cooks for herself, and does her own grocery shopping); 82 (drives). The conflict between Dr. Fisher's opinion and Plaintiff's activity level is a specific and legitimate reason for rejecting the opinion. *Ford*, 950 F.3d at 1155.

Additionally, the ALJ found Dr. Fisher's restrictive postural limitations inconsistent with Plaintiff's conservative treatment history for her back and knee impairments. AR 23, citing AR 812 (Hyalgan injection in right knee); 1987 (medications), 2052 (medications as needed). Conservative treatment is a specific and legitimate reason for discounting Dr. Fisher's opinion. *See Spears*, 842 F. App'x 107, 109; *Fisher*, 2019 WL 13044622, at *3.

Finally, the ALJ discounted Dr. Fisher's restrictive postural limitations because Plaintiff's treatment notes generally showed a trend of improving range of motion in the knees. AR 23, citing AR 1943 (range of motion in degrees, both knees: 130 flexion, 180 extension), 1961 (range of motion in degrees, both knees: 120 flexion, 180 extension), 2099 (02/14/2020; "Bilateral knee with full ROM . . ."). This, too, is a specific and legitimate reason for discounting Dr. Fisher's opinion. *See Carmickle*., 533 F.3d at 116; *Gentry*, 2019 WL 1377033, at *8.

Plaintiff has not forwarded a specific or particularized challenge to any of the ALJ's stated

---

shoulder surgeries. AR 21.

reasons for discounting Dr. Fisher's restrictive limitations. Based on the above, the Court concludes that the ALJ did not commit reversible error in evaluating the restrictions opined by Dr. Fisher.

Dr. Cho

Plaintiff asserts that the ALJ failed to provide specific or legitimate reasons to reject the disabling limitations opined by Dr. Cho. (Doc. 23 at 16-17.) Beyond this general assertion, Plaintiff provides no further argument related to Dr. Cho's opinion or his opined limitations. (*Id.*) Notwithstanding the absence of any meaningful discussion or argument, the Court has considered the ALJ's evaluation of Dr. Cho's opinion.

In February 2017, Dr. Cho identified the following restrictions: no lifting/pushing/pulling over 20 lbs.; no work at/above shoulder level with involved arm; limited use of left hand/arm; limited use of right hand/arm; no kneeling/squatting; and no climbing ladders. AR 1117. The ALJ gave "some limited weight" to Dr. Cho's opinion, reasoning as follows:

> Insofar as he did not find more restrictive limitations, his opinion is consistent with findings of norma gait, 5/5 strength, and intact sensation, as well as the claimant's ability to perform most of her necessarily daily activities without assistance (9F/330, 640, 786; 13F/33; 15F/50, 60, 62; Testimony). [¶] However, the statement that the claimant has "limited" use of [her] arms and hands is overly vague, and any limitations in this area would be inconsistent with findings of intact sensation and 5/5 strength in the upper extremities (9F/638-641; 13F/14, 33). The postural limitations (particularly related to kneeling) are not entirely consistent with the conservative treatment history for the back and knee impairments (see 9F/26; 14F/14; 15F/3). To be sure, Dr. Cho supported his assessment with a physical examination showing some reduction in motion of the bilateral shoulders and knees (9F/330). Nevertheless, the treatment notes generally show a trend of improving range of motion in the knees (13F/15, 33; 15F/50). The limitation on work at the shoulder level is inconsistent with treatment notes from Dr. Esposito, which indicate that the claimant has gradually regained range of motion in her shoulders over time, so that by February 2019 she had normal flexion and abduction (11F/25, 60). Further, physical therapy notes indicate that the claimant had functional range of motion in the left shoulder following her surgery (9F/51; 12F/26).

AR 22.

The Court finds that the ALJ proffered several specific and legitimate reasons for rejecting Dr. Cho's opined limitations. For instance, the ALJ determined that Dr. Cho's statement that Plaintiff had "limited" use of her arms and hands was overly vague, and any limitations in this area would be inconsistent with findings of intact sensation and 5/5 strength in the upper

1  extremities. AR 22, citing AR 1424-1427 (intact sensation in the upper extremities); 1942
2  ("Motor function in upper extremities was graded 5/5 in the biceps, triceps, wrist flexors and
3  extensors and intrinsics of the hand."), 1961 (no radicular symptoms). Here, the ALJ properly
4  considered the quality of the explanation in assigning weight to Dr. Cho's limitations, noting the
5  use of the vague term "limited." *See Ford*, 950 F.3d at 1155. Additionally, the ALJ properly
6  discounted Dr. Cho's limitation of the arms and hands as unsupported by the medical record.
7  *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957.

8  Second, the ALJ determined that Dr. Cho's postural limitations, particularly those related
9  to kneeling, were not entirely consistent with Plaintiff's conservative treatment history for the
10 back and knee impairments. AR 23, citing AR 812 (Hyalgan injection in right knee); 1987
11 (medications), 2052 (medications as needed). Inconsistency with conservative treatment is a
12 specific and legitimate reason for discounting Dr. Cho's opinion. *See Spears*, 842 F. App'x 107,
13 109; *Fisher*, 2019 WL 13044622, at *3.

14 Third, while the ALJ acknowledged that Dr. Cho supported his assessment with a physical
15 examination showing some reduction in motion of the bilateral shoulders and knees, (AR 1116),
16 the ALJ contrasted those findings with treatment notes generally showing a trend of improving
17 range of motion in the knees (AR 1943, 1961, 2099 ("Bilateral knee with full ROM . . .")),
18 improving range of motion in her shoulders, such that by February 2019, she had normal flexion
19 and abduction, (AR 1812), and functional range of motion in the left shoulder following surgery,
20 (AR 837 ("WFL"), 1880 (same)). AR 22. Subsequent improvement in Plaintiff's condition is a
21 specific and legitimate reason for discounting Dr. Cho's limitations. *See Carmickle*., 533 F.3d at
22 116; *Gentry*, 2019 WL 1377033, at *8.

23 Based on the above, the Court finds that the ALJ did not commit reversible error when
24 evaluating the medical opinions from Drs. Esposito, Fisher, and Cho.

25 **B. Subjective Complaints**

26 Plaintiff asserts that the ALJ failed to identify clear and convincing reasons for
27 discounting her subjective complaints. (Doc. 23 at 18.) Plaintiff contends that "[t]he ALJ
28 rejected [her] pain complaints based upon objective findings and her daily activities, but this

13

cannot constitute a clear and convincing reason rejecting Plaintiff's subjective pain complaints." (*Id.* at 19.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 18. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

As an initial matter, the Court notes that the ALJ did not entirely discount Plaintiff's subjective complaints. For instance, the ALJ considered Plaintiff's allegations that she could not reach or lift her arms above her ahead, and agreed that she should avoid overhead work based on her history of shoulder surgeries. AR 17. The ALJ also found that given her shoulder issues, Plaintiff was limited to lifting and carrying in the light range, precluded from any over the shoulder level work, and pushing/pulling limited to 15 pounds. AR 17. Further, the ALJ considered Plaintiff's complaints involving pain in her back and knees, and restricted Plaintiff to four hours of standing and/or walking total in an eight-hour workday, only occasional postural limitations, and certain environmental limitations. AR 17, 19, 22.

As to her remaining allegations, the ALJ generally discounted Plaintiff's subjective complaints because they were not supported by the objective medical evidence, they were inconsistent with her activities, and she improved with treatment. In particular, the ALJ found that Plaintiff's allegation that she could not lift or carry more than five pounds due to shoulder

pain was not supported by objective evidence from her treatment providers, which noted 5/5 strength and intact sensation in the extremities. AR 17, citing AR 1424-1427 (intact sensation) 1942 ("Motor function 5/5 in the biceps, triceps, wrist flexors and extensors and intrinsics of the hand."); *see also* AR 1423 (5/5 motor power bilaterally). Although a factor that the ALJ can consider, a lack of supporting medical evidence cannot form the sole basis for discounting testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining "lack of medical evidence cannot form the sole basis for discounting pain testimony"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (concluding that "an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). Here, the ALJ did not discount Plaintiff's complaints relative to lifting and carrying based solely on a lack of supporting objective medical evidence. Rather, the ALJ also considered Plaintiff's acknowledgement that she could "do her own laundry and shop for her own groceries, both of which require a certain degree of lifting and carrying." AR 17. An ALJ can properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–1113 (9th Cir. 2012); *Burch*, 400 F.3d at 581 (concluding ALJ was permitted to consider daily living activities in analysis of claimant's allegations). Even where a claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

  The ALJ also discounted Plaintiff's allegation that she could not do work with her elbows bent due to shoulder pain based on evidence from her treatment providers noting she moves her extremities well. AR 17, citing AR 2020 ("Extremities: MAE well."); 2022 (same); 2024 (same), 2027 (same), 2029 (same). As indicated above, an ALJ may consider a lack of supporting medical evidence to discount subjective complaints provided it is not the only reason. *Burch*, 400 F.3d at 681; *Bunnell*, 947 F.2d at 345. In this case, the ALJ also discounted Plaintiff's allegation regarding her inability to do work with her elbows bent based on her own statements that she can sew and crochet for up to two hours at a time. AR 17; *see* AR 80. The inconsistency

15

1 between Plaintiff's allegation and her daily activities is an appropriate reason for discounting
2 Plaintiff's subjective complaints. *Molina*, 674 F.3d at 1112–1113.

3       As to her allegations regarding shoulder movement, the ALJ determined that other than
4 her limitation to avoid overhead work, additional limitations were not supported. AR 17. In so
5 determining, the ALJ indicated that while treatment notes showed reduced range of motion in
6 both shoulders, the objective evidence demonstrated that she generally retained the ability to
7 reach in front of her and to the sides below the head level. AR 17, citing AR 1116 (February
8 2017; left shoulder range of motion: flexion 135, extension 45, abduction 90, adduction 30; right
9 shoulder range of motion: flexion 90, extension 30, abduction 80, adduction 10), 1812 (February
10 2019; "Range of motion improving. She abducts to about 150, flexes to about 160, internal
11 rotation is 70, external rotation is 60, extension is 28, and adduction is 20."), 1942-43, 1960-61
12 (April 2018; flexion 110, abduction 100). The lack of supporting medical evidence is a relevant
13 factor that the ALJ may consider. *Burch*, 400 F.3d at 681. In addition to the objective evidence,
14 the ALJ also considered treatment notes from Dr. Esposito, which indicated that Plaintiff had
15 "gradually regained range of motion in her shoulders over time, so that by February 2019 she had
16 normal flexion and abduction." AR 17, citing AR 1812 (February 2019; "Range of motion
17 improving. She abducts to about 150, flexes to about 160, internal rotation is 70, external rotation
18 is 60, extension is 28, and adduction is 20."), 1847. The effectiveness of medication or treatment
19 is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§
20 404.1529(c)(3) and 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)
21 ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of
22 disability."). The ALJ further considered that Plaintiff was "able to drive, prepare meals for
23 herself, shop for groceries, do her laundry, wash her own hair, go swimming as her primary
24 exercise (though no more than two hours per week), and often apply her own makeup, all of
25 which require reaching in various directions and repeated arm movements." AR 17, citing AR
26 1828 (exercises on a regular basis at an average of 60 minutes a day, 2 times a week; main form
27 of exercise is swimming) and Testimony. The ALJ appropriately discounted Plaintiff's
28 allegations regarding shoulder movements based on their inconsistency with her daily activities.

1   *Molina*, 674 F.3d at 1112–1113.

2   As to Plaintiff's back and knee issues, the ALJ found that diagnostic tests, treatment history, and activities of daily living indicated that Plaintiff's symptoms were not as severe as alleged. AR 19. With regard to alleged lower back pain, the ALJ found that Plaintiff's MRIs showed only mild degenerative changes with no evidence for herniated discs, compressive discopathy, central canal stenosis, or foraminal impingement. AR 19, 472-73. An ALJ may properly discount a claimant's allegations of severe pain where diagnostic images identify only mild conditions. *See Burch*, 400 F.3d at 681. In addition to the diagnostic findings, the ALJ also determined more broadly that Plaintiff received largely conservative treatment for her back and knee impairments  AR 19, citing AR 812 (Hyalgan injection for right knee), 1988 (physical therapy), 2052 (medications). She had not undergone surgery for these impairments and there was no evidence that her medical providers believed surgery was warranted. AR 19, citing AR 2100 (to continue conservative treatment for knees, referred to physical therapy for knee and back pain).

An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). Further, the ALJ considered that despite her knee and back symptoms, Plaintiff could drive, sew and crochet for up to two hours, wash her hair, make meals for herself, do her own, laundry, clean her bedroom and bathroom, and shop for groceries. AR 19. The ALJ appropriately discounted the severity of Plaintiff's allegations regarding back and knee pain based on their inconsistency with certain of her daily activities, such cleaning, shopping for groceries, and driving. *Molina*, 674 F.3d at 1112–1113.

The ALJ also considered that other evidence showed that Plaintiff's symptoms were not as severe as alleged. AR 19. In doing so, the ALJ considered that Plaintiff's allegations were inconsistent with the medical evidence. While a lack of objective medical evidence cannot form the sole basis for discounting testimony, inconsistency with the medical evidence or medical

17

opinions can be sufficient. *See Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (citing *Carmickle*, 533 F.3d at 1161); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *accord Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-CV-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is 'uncorroborated' by the medical evidence from testimony that is 'contradicted' by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard."). For instance, the ALJ indicated that while Plaintiff stated she could not stand or walk for very long, her medical providers generally found her gait and station to be normal. AR 19, citing AR 1116 (gait and station within normal limits), 1426 (walks with a normal gait), 1572, 2099 (February 2020, gait normal), 2109 (January 2020, gait normal), 2111 (same). The ALJ also indicated that Plaintiff had been able to stand on her heels and toes without difficulty, ambulate freely in a toe-heel neutral gait, and get on and off examination tables without difficulty. AR 19, citing 1424 (normal gait, "able to stand on heels and toes without difficulty") 1942 ("ambulated about the room freely in the toe-heel neutral gait," "able to mount and dismount the examination table without difficulty"). The ALJ observed that Plaintiff's medical providers generally noted that she had 5/5 strength and intact sensation in the extremities. AR 19, 1424-1427 (sensation intact in lower extremities), 1942 (motion function graded 5/5; no sensory deficits in the lower extremities), 1961 (same). Further, the ALJ indicated that while Plaintiff alleged she could not kneel on even an occasional basis, the treatment notes generally showed a trend of improving range of motion in the knees, (AR 1942 [flexion 130, extension 180], 1961 [flexion 120, extension 180], 2099, and she demonstrated full range of motion in her knees on physical examination in February 2020, (AR 2099 [February 2020; "Bilateral knee with full ROM . . . ."]). AR 19. Additionally, the ALJ considered that while Plaintiff stated that she frequently falls due to her knees locking up, the record did not show falling-related injuries (other than the original injury prior to the alleged onset date), and her medical providers had not prescribed an assistive device for balance. The ALJ also considered Plaintiff's statement that she

does not sleep well, but noted her medical providers found her to be alert and oriented. AR 19, citing AR 1468 2023, 2097.

Based on the above, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

## **CONCLUSION AND RECOMMENDATION**

For the reasons stated, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (Doc. 23) be denied.

2. The Commissioner's request to affirm the agency's determination (Doc. 27) be granted.

3. The Clerk of this Court be directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Linda Marie Pacheco.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 13, 2024**          /s/ *Barbara A. McAuliffe*          
                                      UNITED STATES MAGISTRATE JUDGE